## FURMAN & CO. *v.* JAS. L. MCMILLIAN *et als.*

JOINT PURCHASERS. *Rights of.* Joint purchasers of land, where one party pays more than his share, stand in respect to the equity between them as partners, and the party paying the excess has the right to be re-imbursed out of the land, and also to have debts paid for money jointly borrowed to pay on the land, before the other party or his attaching creditor can have any part of the proceeds.

### FROM GILES.

Appeal from the Chancery Court at Pulaski. W. S. FLEMING, Ch.

McFARLAND, J., delivered the opinion of the court.

The complainants are the creditors of James S.

McMillian, a non-resident, and bring this attachment bill seeking to reach his interest in certain lands.

It appears that at a sale of the land of Austin B. Moore, deceased, by the Clerk and Master of the Chancery Court at Pulaski, said McMillian and James P. Moore became the purchasers of two tracts jointly, one of 130 acres and a fraction, the other 178¾ acres, at the aggregate price of $8,809.25, for which they gave their notes. They afterwards borrowed of one Paul Childs, $810.00, and paid the same upon their land notes, giving to Childs their note for the money borrowed, which remains unpaid.

The balance of the purchase money, except about $1,000, has been paid by said Moore. This balance of $1,000 remains unpaid. McMillian and Moore purchased jointly from the original owners 2-12ths of the 130 acre tract. Under these facts the Chancellor held that McMillian was the owner of one-half of the 2-12ths purchased jointly by him and Moore in the 130 acre tract, "and is also interested in the tract of 178¾ acres to the extent of one-half of $810," paid thereon by him and Moore—and in satisfaction of the decree rendered in favor of the complainants, the Master is directed to advertise and sell, in the language of the decree, "the said interest of defendant McMillian heretofore mentioned in said lands."

From this decree Moore appeals. That part of the decree declaring McMillian to be the owner by purchase of one-twelfth of the 130 acre tract is not complained of.

If the decree had simply directed a sale of Mc-

Millian's interest as equity, leaving the purchaser to take his shoes and adjust that equity with Moore and the original owners, perhaps Moore could not complain, as he would not in that view be injured, whether the purchaser obtained any title or not; but Moore being a party to the cause, he might be held bound by that part of the decree declaring and defining the nature and extent of McMillian's interest to be sold.   The decree does not, as we understand it, direct a sale of the entire tract, but only McMillian's interest, and that interest we think is not correctly defined by the decree, although the language is somewhat indefinite. McMillian and Moore were not owners in proportion to the amount paid by them upon the land—they were joint owners of the land purchased, subject, however, to the lien retained to secure the purchase money. This lien extended to all the land, and was prior to all other rights.   Moore having paid more than his half, did not thereby become the owner of McMillian's share of the land in the proportion of his over-payment—nor did McMillian become the owner in proportion to the amount paid by him.   The doctrine of resulting trust does not apply, but in the adjustment of the equity between Moore and McMillian, the former is entitled to be repaid out of the latter's interest in the land the amount paid by the former in excess of his share.   In other words, if a sale of the land be necessary, the proceeds should first be applied to the unpaid purchase money; second, the remainder equally divided, and out of McMillian's share Moore should be re-imbursed for payments made by him in excess of

his half, and if anything be left it would belong to McMillian. These are the principles we understand to be settled in *Gee* v. *Gee,* 2 Sneed, 395; *Rankin* v. *Black,* 1 Head, 658; *Williams* v. *Love,* 2 Head, 84.

The equities of Moore as indicated, are superior to those of the attaching creditor of McMillian.

The question, however, principally discussed is, how the payment of the $810.00 shall be treated, or in other words, whether Moore has the right to have this sum paid out of McMillian's interest in the land. This payment of this sum is stated in the answer to have been a joint payment. This it is claimed, gives McMillian credit for having paid one-half of it. Cases of this sort, while not strictly cases of partnership, are yet analogous in principle, and the equities between the parties are settled upon that basis, and the joint note of Moore and McMillian for the $810.00 paid is still outstanding, and it may, we think, be fairly deduced from this record, that McMillian is insolvent, and Moore will have this debt to pay. The over-payment by Moore, aside from this $810.00, would make a case for the adjustment of their equities by a court of equity holding McMillian's share of the land or its proceeds bound to re-imburse Moore for the money paid by him in excess of his share, and in a litigation between the parties for the settlement of the equities between them, McMillian would not be entitled to anything of the proceeds of the land until Moore should be re-imbursed for his over-payment, and also this outstanding note be paid. The land being in the na-

ture of partnership property, should be applied to the partnership debts before the surplus is divided.

This debt was created for money to apply to the land purchase, and it must necessarily be settled before the transaction can be settled upon the principles applicable to partnerships, and this, we think, reaches the equities between the parties; and in a case of this character the attaching creditor acquires no higher rights than his debtor, but stands in his shoes.

It seems to be assumed that this $810.00 was paid on the 178¾ acre tract, as to which there is no proof. The decree of the Chancellor will be reversed and the rights of the parties declared in accordance with this opinion and the cause remanded, with leave to the complainants to proceed in such manner as they may be advised. If they choose to sell the equity of Mc-Millian as defined, they may do so, or have the entire. lands sold upon the basis above indicated.

The facts in relation to the amount for which this tract was purchased, or the balance unpaid, do not appear in this decree. The record shows that the two tracts were purchased jointly for a certain sum, but the price of each saparately, or the balance due, is not shown. The costs of this cause will be divided.